**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| **JIAHAO WANG,**<br><br>Plaintiff,<br><br>v.<br><br>**THE DEFENDANTS IDENTIFIED ON SCHEDULE A,**<br><br>Defendants. | **Case No. 1:26-cv-14177**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Jury Trial Demanded** |

Plaintiff Jiahao Wang ("Plaintiff"), by undersigned counsel, alleges as follows based on counsel's investigation, documents presently available, and information and belief as to matters within Defendants' or third parties' knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this patent infringement action under 35 U.S.C. §§ 271(a) and 281 against the Defendants identified in Schedule A for offering to sell or selling electronic smoking devices. The devices offered through the Amazon listings and the independent website listing identified in Schedule A are referred to individually as an "Accused Product" and collectively as the "Accused Products." Plaintiff asserts infringement of U.S. Patent No. 12,402,641 (the "'641 Patent") as to the Accused Products identified in Schedule A, as set out in Count I.

2. On October 24, 2026, Plaintiff's counsel purchased one accused device from each of the fifteen seller accounts identified in Schedule A. Amazon's order records identify the seller for each order and show that each order was completed and delivered to Chicago, Illinois.

3. Each test purchase supplied a physical unit for examination and is alleged as an act of direct infringement by the seller that completed the transaction. The continued availability of the accused devices interferes with Plaintiff's plans to bring the patented device to market and to set licensing terms. Plaintiff seeks relief from each Defendant severally for that Defendant's offers and sales, including damages no less than a reasonable royalty and appropriate injunctive relief.

**THE PARTIES**

4. Plaintiff Jiahao Wang owns the '641 Patent and has held legal title to it since it issued on September 2, 2025. A copy of the patent is attached as Exhibit 1.

5. Defendants are the sellers identified on Schedule A, attached as Exhibit 2. Schedule A identifies each Amazon storefront and Seller ID, the accused Amazon listings by Amazon Standard Identification Number ("ASIN"), and an additional accused listing on an independent website by its product-page URL. The independent website listing displays the same brand as the corresponding Amazon storefront. On information and belief, each offer identified in Schedule A was made by the corresponding Defendant through its Amazon storefront or independent website.

**JURISDICTION AND VENUE**

6. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Count I arises under the Patent Act, including 35 U.S.C. §§ 271(a) and 281.

7. Each Defendant marketed and offered an Accused Product for sale through an interactive Amazon storefront accessible to consumers in Illinois. Each Defendant accepted and fulfilled an order placed by Plaintiff's counsel for delivery to Chicago, Illinois, and the product was delivered in this District. By completing that sale, each Defendant purposefully directed commercial activity to Illinois. Plaintiff's infringement claims arise out of or relate to that Defendant's own conduct in Illinois.

8. Exhibit 2 identifies each Defendant's Amazon storefront, Seller ID, and accused listings. Exhibit 3 links each Defendant to the purchased ASIN and documents the completed sale and delivery to Chicago. These facts support specific personal jurisdiction over each Defendant under Federal Rule of Civil Procedure 4(k)(1)(A) and 735 ILCS 5/2-209(c). See *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 623—27 (7th Cir. 2022).

9. Alternatively, this Court may exercise personal jurisdiction over any foreign Defendant under Federal Rule of Civil Procedure 4(k)(2) if that Defendant is not subject to personal jurisdiction in this action in any state's courts of general jurisdiction and exercising jurisdiction comports with due process. Plaintiff's claims arise under federal law, and the relevant contacts with the United States include that Defendant's offer for sale through its U.S.-facing Amazon storefront and its completed sale and delivery of the Accused Product in the United States. See *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999—1000 (Fed. Cir. 2018).

10. On information and belief, twelve Defendants are not residents of the United States, based on the non-U.S. business addresses listed in their Amazon seller profiles. Venue is proper in this District as to those Defendants under 28 U.S.C. § 1391(c)(3).

11. Defendants Nos. 4, 13, and 15 list U.S. business addresses in their Amazon seller profiles. Each Defendant used its Amazon storefront to promote an Accused Product and offer it for sale to consumers who could access the listing in Illinois and order the product for delivery there. Plaintiff's counsel placed one such order with each Defendant for delivery to Chicago, Illinois. Each Defendant accepted the order, completed the sale, and caused the product to be delivered in this District, as documented in Exhibit 3. These completed transactions show that each Defendant directed sales activity to Illinois through its storefront. Plaintiff alleges that each sale constitutes an act of infringement in this District for purposes of 28 U.S.C. § 1400(b).

## THE '641 PATENT

12. The '641 Patent, titled "Smoking Device," issued on September 2, 2025 from U.S. Application No. 19/190,796, filed April 28, 2025. The patent contains seventeen claims, including independent Claim 1, and is presumed valid under 35 U.S.C. § 282(a).

13. Claim 1 recites a base with a fuel combustion chamber, a feed inlet and a smoke outlet, and a detachable cover whose upper and lower portions together define a space housing the electronic ignition kit and smoke delivery assembly. The ignition kit ignites the fuel, and the smoke delivery assembly directs the resulting smoke through the outlet. The dependent claims further address the ignition and airflow openings, the isolation baffle and mounting enclosure, the ignition head and its control circuitry, and the air-guiding channel and turbine fan (Claims 2-8). They also address the removable filter, the combustion and smoke zones, and the fit and sealing arrangements (Claims 9-12); the detachable heat insulation element (Claims 13-14); and the dedicated smoking cup, upper-cover air inlet, and rechargeable power supply (Claims 15-17). See Exhibit 1.

## THE ACCUSED PRODUCTS AND DEFENDANTS' SALES

14. Plaintiff's counsel purchased one physical unit from each seller account. Exhibit 3 indexes the order and delivery records by Defendant number and purchased ASIN. Plaintiff matched the orders to the physical units using the available shipping, packaging, and product records. Exhibit 5 provides a separate infringement chart for each purchased unit.

15. Exhibit 5 sets out the physical examination and claim-by-claim analysis of all fifteen test-purchased devices. Plaintiff asserts at least Claims 1-14, 16, and 17 as to each device. The applicable charts identify any additional claim asserted for an individual device.

16. The fifteen test-purchased devices share a common physical arrangement. Each has a base with a fuel combustion chamber, a feed inlet, and a smoke outlet, and a detachable cover that fits over the feed inlet. Inside the cover, the upper and lower portions define a space that houses the electronic ignition kit and the smoke delivery assembly. In that space the control circuit board is positioned above the fan in a stacked arrangement. The ignition kit ignites fuel in the base, and the smoke delivery assembly directs the resulting smoke through the outlet. Exhibit 5 identifies the structures corresponding to the limitations of independent Claim 1 for each device.

17. The examinations also documented the structures relied on for the dependent claims, including the ignition and airflow openings in the lower cover, the baffle and mounting enclosure, the air-guiding channel, the ignition head and its control circuitry, the filter and heat insulation structures, the upper-cover air inlet, and the built-in rechargeable power supply. Exhibit 5 identifies the structures and arrangements supporting the claims asserted for each device.

18. The product images in the Schedule A listings without a test purchase show devices that closely resemble the units Plaintiff purchased from the corresponding Defendants, including in the shape of the housing and, where visible, the placement of openings and controls. At the time of the test purchases, some of these listings showed the devices as out of stock or otherwise unavailable for purchase. For each listing from which Plaintiff did not obtain a test unit, Plaintiff compared the listing's product images with the corresponding unit Plaintiff had purchased from the same seller. Based on the similarities shown in the images, the seller-attribution information described in paragraph 5, and the available variant information, Plaintiff alleges on information and belief that these listings identify the same devices or variants of those devices, including different color versions where identified, and that their internal structures relevant to Claim 1 are substantially the same as those of the corresponding purchased units obtained from the same seller examined in Exhibit 5.

19. Plaintiff has not licensed or otherwise authorized any Defendant to offer to sell or sell an Accused Product.

## FACTS RELEVANT TO JOINDER

20. Plaintiff seeks to join the fifteen Defendants identified in Schedule A under Federal Rule of Civil Procedure 20(a)(2) and 35 U.S.C. § 299. Plaintiff seeks relief severally against each Defendant for that Defendant's own offers for sale and sales of the accused products identified in Schedule A.

### *A. Same Accused Product and Related Series of Transactions*

21. For purposes of § 299(a)(1), Plaintiff alleges that the fifteen test-purchased devices constitute the same accused product in the respects material to the claims asserted as to all

fifteen devices. Each device uses a detachable cover over a fuel-holding base. The upper and lower portions of the cover define a space housing both the electronic ignition assembly and the smoke-delivery assembly, and the smoke-delivery assembly directs smoke through an outlet in the base. In each device, the control board is mounted above the fan. Exhibit 5 identifies the structures in each device corresponding to the asserted independent and dependent claims. Figure 1 compares the cover assemblies of the fifteen test-purchased devices and illustrates the shared stacked configuration described above.

| | | | | |
|---|---|---|---|---|
| <br>Defendant 1 | <br>Defendant 2 | <br>Defendant 3 | <br>Defendant 4 | <br>Defendant 5 |
| <br>Defendant 6 | <br>Defendant 7 | <br>Defendant 8 | <br>Defendant 9 | <br>Defendant 10 |
| <br>Defendant 11 | <br>Defendant 12 | <br>Defendant 13 | <br>Defendant 14 | <br>Defendant 15 |

**Figure 1.** Teardown photographs of the cover assemblies of the fifteen test-purchased devices, arranged by Defendant number.

22. As documented in Exhibit 4, KZ-series units sold by different Defendants are nearly identical in the internal component layouts relevant to the asserted claims, and certain units arrived in retail boxes with closely matching front-panel graphics and layouts. Exhibit 5 further documents matching control-board markings and layouts across units sold by different Defendants, as well as corresponding board markings and layouts in certain KZ units and other accused units.

23. In assessing whether infringement claims arise from the same series of transactions under Rule 20, the Federal Circuit has identified common component sourcing and overlap in product development and manufacture as relevant considerations. In re EMC Corp., 677 F.3d 1351, 1359-60 (Fed. Cir. 2012). Here, the recurring model markings and matching retail packaging support an inference that the corresponding finished devices came from a common upstream source. The matching control-board markings and layouts likewise support an inference that components used in the accused cover assemblies came from a common source. Together, these facts support the inference that the corresponding sales by different Defendants were connected through the upstream supply of the finished devices or their components.

24. Based on the shared configuration of the fifteen test-purchased devices and the sourcing evidence described above, Plaintiff alleges on information and belief that the offers for sale and sales of the same accused product by all fifteen Defendants identified in Schedule A arose from the same series of transactions involving the upstream supply and downstream sale of that product, within the meaning of 35 U.S.C. § 299(a)(1) and Federal Rule of Civil Procedure 20(a)(2)(A).

***B. Questions of Fact and Law Common to All Defendants***

25. Plaintiff asserts Claims 1-14, 16, and 17 as to each of the fifteen test-purchased devices. The examinations documented a shared arrangement across all fifteen devices: the upper and lower portions of a detachable cover form a space housing both the electronic ignition assembly and the smoke-delivery assembly. This shared arrangement presents questions of fact common to all Defendants under 35 U.S.C. § 299(a)(2) and Rule 20(a)(2)(B), including whether portions of the isolation baffle and mounting enclosure together define an air-guiding channel and how the fan and channel direct smoke through the base outlet. Exhibit 5 documents the arrangement in each tested device and identifies the structures corresponding to the other asserted limitations, including the filter, heat-insulation element, upper-cover air inlet, and rechargeable power supply.

26. The meaning and scope of Claims 1-14, 16, and 17 present common questions of law under Rule 20(a)(2)(B) because the same construction applies to the infringement analysis for all fifteen test-purchased devices. As shown in Exhibit 5, Plaintiff asserts literal infringement of Claim 15 as to Defendant No. 7 and infringement under the doctrine of equivalents as to Defendant No. 12.

***C. Common Evidence and Seller-Specific Relief***

27. The common claim construction issues and overlapping teardown and sourcing evidence can be addressed in one action. Exhibits 2, 3, and 5 identify the listings, transactions, and devices attributable to each Defendant and link each examined unit to the corresponding Defendant’s completed sale for delivery to Chicago. Infringement, any defenses specific to a Defendant, and damages remain subject to proof as to each Defendant. Under Rule

20(a)(3), the Court may enter judgment against each Defendant according to that Defendant's liability.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 12,402,641

28. Plaintiff incorporates paragraphs 1 through 27 by reference.

29. Each Defendant has directly infringed the '641 Patent under 35 U.S.C. § 271(a) by offering to sell or selling its Accused Products in the United States without Plaintiff's authorization. As to each purchased device, Plaintiff asserts Claims 1–14, 16, and 17, together with Claim 15 as to Defendants Nos. 7 and 12. Plaintiff alleges literal infringement or infringement under the doctrine of equivalents as specified in the applicable chart, including alternative allegations where indicated. The accused sales include the transactions documented for each Defendant in Exhibit 3.

30. Exhibit 5 compares each test-purchased device with each limitation of the claims asserted for that device. As to the additional listings described in paragraph 18, Plaintiff alleges on information and belief that the devices offered for sale meet each limitation of Claim 1.

31. As a direct and proximate result of each Defendant's unauthorized offers and sales, Plaintiff has suffered compensable injury and has received no royalty. Plaintiff seeks damages adequate to compensate for actionable infringement occurring on or after September 2, 2025, in an amount to be determined from the evidentiary record, but in no event less than a reasonable royalty under 35 U.S.C. § 284.

32. Plaintiff also seeks preliminary and permanent injunctive relief under 35 U.S.C. § 283 against continued unauthorized offers and sales of the Accused Products, to the extent supported by the record.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each Defendant:

A. A judgment that the Defendant has directly infringed the claims of the ’641 Patent asserted against that Defendant in Count I.

B. Damages adequate to compensate for the infringement, in an amount to be determined from the evidentiary record and in no event less than a reasonable royalty under 35 U.S.C. § 284, including any evidence-supported component of the hypothetical license negotiation.

C. Prejudgment interest and costs as fixed by the Court, and postjudgment interest under 28 U.S.C. § 1961.

D. Preliminary and permanent injunctive relief under 35 U.S.C. § 283, or an ongoing royalty for continued infringement as the Court deems appropriate.

E. Enhanced damages up to three times the amount found or assessed under 35 U.S.C. § 284, to the extent the evidentiary record establishes willful or otherwise egregious infringement warranting enhancement; and reasonable attorney’s fees under 35 U.S.C. § 285 if the case is found exceptional.

F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Dated: November 16, 2026

Respectfully submitted,

**DELTA IP LAW PLLC**

By: /s/ Wei Chen

Wei Chen

20 F Street NW, Suite 700

Washington, DC 20001

Telephone: 424-376-9780

Email: chloe@deltaiplaw.com

Counsel for Plaintiff Jiahao Wang